UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE HOLOCAUST VICTIM ASSETS
LITIGATION,

**MEMORANDUM & ORDER**

09-CV-3215 (ERK)
96-CV-4849 (ERK)

KORMAN, J.:

On July 31, 2009, I ordered Edward D. Fagan, one of plaintiff's class counsel in *Holocaust Victims Assets Litigation*, No. 96-cv-4849, to provide an explanation in writing as to why he failed to disclose in his application for reimbursements certain contributions he had received in the amount of $186.352.50 for disbursements of the kind for which he claimed – and ultimately was awarded – reimbursement from the Settlement Fund. (Order to Show Cause (July 31, 2009); Order Granting App. for Attorney's Fees and Expenses to Edward D. Fagan (Dec. 4, 2002).) I issued the Order to Show Cause after providing Mr. Fagan ample opportunity to provide a response to that question.

Indeed, on January 26, 2009, I advised Mr. Fagan of my concern regarding his failure to disclose these contributions and asked that he provide an explanation within thirty (30) days. (*See* Letter from Judge Korman to Edward Fagan (Jan. 26, 2009).) Mr. Fagan responded on March 2, 2009 but did not provide an answer to my question. (*See* Letter from Edward Fagan to Judge Korman (March 2, 2009).) Instead, Mr. Fagan provided excuses as to why he could not answer. (*Id.*) Thus, on June 18, 2009, I again requested an explanation and advised Mr. Fagan that if he failed to "adequately respond in writing" within thirty (30) days, "I intend to issue an order to show cause as to why you should not be ordered to return to the Settlement Fund, at the very least, the more than $185,000 you failed to disclose in your application for reimbursements." (Letter from Judge Korman to Edward Fagan (June 18, 2009).)

1

On June 24, 2009, Mr. Fagan emailed my law clerk, advising him that although he had been out of the country, it was his "intention to respond" to my letter. (Fagan email (June 24, 2009).) On July 20, 2009, two days after his response was due, Mr. Fagan again emailed my law clerk asking him to "[p]lease inform Judge Korman that a copy of my response to [Judge Korman's] June 18th letter is being mailed today." (Fagan email (July 20, 2009).) Nevertheless, Mr. Fagan never did respond. Thus, on July 31, 2009, I issued the Order to Show Cause, which provided Mr. Fagan yet another opportunity to respond to my questions.

Mr. Fagan has not availed himself of this opportunity. Indeed, rather than respond to my question, he has moved to excuse and disqualify me pursuant to 28 U.S.C. §§ 144 and 455. (Fagan Aff. (Aug. 21, 2009).) In support of this motion, Mr. Fagan has submitted an affidavit in which he makes a number of allegations as to my personal bias against and prejudice towards him, which, he argues, warrant my recusal. All of these allegations are without merit. I first briefly summarize the allegations in Mr. Fagan's motion before turning to the applicable law.

To begin, Mr. Fagan alleges that "[f]or reasons unbeknownst to [him] certain animus developed between Judge Korman . . . and me." (Fagan Aff. ¶ 9.) As "evidence" in support of this "animus," Mr. Fagan makes reference to "disparaging, insulting, prejudicial and biased [or hostile] comments [made by Judge Korman] about [him] in public" from "1999 to the present." (*Id*. ¶¶ 10-11.) Mr. Fagan, however, does not identify a single such comment during this 10 year period. Next, in a section titled "Prejudice & Bias Against Me in Relation to Fees & Expenses," Mr. Fagan alleges that I

> "unilaterally stripp[ed him] of a $250,000 fee for representation and work [he] did for a whistleblower who had a separate tort claim against the Swiss Banks and who [he] represented independent of The Swiss Banks Case and for whom a $1 million settlement was negotiated by [him] on his [client's] behalf.

(*Id*. ¶ 12.) As to his fee and reimbursement application in the Swiss Banks Case, for which he was awarded $750,000 in fees and $222,311.69 in disbursements (Order (Dec. 4, 2002)), Mr. Fagan alleges that he was forced to "accept[] an agreement in which [he] was literally screwed out of millions of dollars in fees and hundreds of thousands of dollars in expense reimbursements" for his work as plaintiff's class counsel in the Swiss Banks case, "all because Judge Korman had arbitrarily determined that he would not

2

allow [Mr. Fagan] to receive more than $1 million in combined fees and expense reimbursement." (*Id*. ¶ 31.)

Finally, Mr. Fagan alleges that in late December 2008 or early January 2009 he "discovered that Judge Korman was involved with an unlawful taking of [his] files by officials of the State of New Jersey (without a warrant) under the pretense that [his] files were 'discovered to have been abandoned and that Judge Korman . . . [was] trying to protect Holocaust victim files." (*Id*. ¶ 36.) I note here that Mr. Fagan used this same "taking of files" argument as the excuse for why he could not provide a response to my question in his March 2, 2009 letter. (*See* Fagan letter (Mar. 2, 2009).) It is also the same argument that the New Jersey Supreme Court's Disciplinary Review Board found meritless during his disciplinary proceedings before that panel. (*See In re Edward D. Fagan*, No. XIV-00-135E, DRB 08-143, at 85 (N.J. Jan. 16, 2009) (finding that "the facts d[id] not support [this] assertion.").) Indeed, as I noted in my June 18, 2009 letter to Mr. Fagan, "it is clear that your documents were not 'taken' or 'witheld' from you. It is also clear that the loss of your records, if in fact any of them have been lost, is no one's fault but your own."

Nevertheless, Mr. Fagan relies on this argument as the basis for his final allegation of bias. He alleges that the reason for my inquiry into "the issue of [his] entitlement to and the 2002 award of Fees and Expenses in The Swiss Bank Case" is nothing more than a subterfuge on my part. (Fagan Aff. ¶ 41.) Indeed, he alleges that my sole motive for so inquiring was to insulate myself from a "liability claim for damages related to the unlawful taking of [his] files." (*Id*. ¶ 40.) Notwithstanding his allegation that "[he] informed [me]" of his intent to make such a claim (*id*. ¶ 40), this is the first I have heard of it and Mr. Fagan cites no communication to me or the Court in which he mentions much less asserts such a claim.

### Discussion

Mr. Fagan moves for my recusal pursuant to 28 U.S.C. §§ 144 and 455(a), (b)(1). Section 144 requires recusal when a party submits an affidavit showing that the judge before whom the matter is pending has a personal bias or prejudice . . . against him." 28 U.S.C.

3

§ 144. Similarly, section 455(b)(1), requires a judge to "disqualify himself" when "he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). "Courts considering the substantive standards of §§ 144 and 455(b)(1) have concluded that they are to be construed *in pari materia*." *Apple v. Jewish Hosp & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). Section 455(a), which applies more broadly to situations "in which [a judge's] impartiality might be reasonably be questioned," 28 U.S.C. § 455(a), requires a showing that would cause "'an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal.'" *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001).

The mere filing of an affidavit of bias, pursuant to 28 U.S.C. § 144, however, "does not require a judge to recuse himself." *Nat'l Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978). "Rather, the trial judge must review the facts included in the affidavit for their legal sufficiency and not recuse himself . . . unnecessarily." *Hoffenberg v. United States*, 333 F. Supp. 2d 166, 171 (S.D.N.Y. 2004) (internal quotation marks omitted). The requirement that the "affidavit . . . state the facts and the reasons for the belief that bias or prejudice exists," 28 U.S.C. § 144, "is a precaution against abuse, removes the averments and belief from the irresponsibility of unsupported opinion, and adds to the certificate of counsel the supplementary aid of the penalties attached to perjury." *Locascio v. United States*, 372 F. Supp. 2d 304, 314 (E.D.N.Y. 2005) (quoting *Berger v. United States*, 255 U.S. 22, 33 (1921)).

The Second Circuit has observed that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. Furthermore, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *LoCascio v. United States*, 473 F.3d 493, 495-96 (2d Cir. 2007) (internal citations and quotation marks omitted). Indeed, personal bias is an attitude arising from extrajudicial sources that results "in an opinion on the merits on some basis other than what the judge

4

learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *Locascio*, 372 F. Supp. 2d at 315.

Here, Mr. Fagan has not stated any facts or reasons arising from extrajudicial sources that support his argument that I am biased or prejudiced against him. Putting aside for the moment Mr. Fagan's mischaracterization of some of my prior rulings, the facts he points to as evidence of bias all concern "events occurring in the course of the current . . . or prior proceedings." Indeed, the decision, as he mischaracterizes it, to "strip" him of fees in connection with his representation of a whistleblower against the Swiss Banks was directly related to the settlement in the Swiss Banks Case. The whistleblower's claims against the Swiss Banks were, for all practical purposes, in competition with the plaintiff's class in the Swiss Banks Case because the whistleblower's settlement was to come out of the larger settlement in the Swiss Banks Case. Thus, I found that Mr. Fagan, who was counsel both to the whistleblower and the plaintiff's class in the Swiss Banks Case had a conflict of interest and could not properly collect fees for his work simultaneously representing, what were essentially, adverse parties.

Similarly, my decision to award Mr. Fagan nearly $1 million dollars in fees and reimbursements for his work on the Swiss Banks Case was based solely on information and facts that arose directly from the Swiss Banks litigation. Mr. Fagan's affidavit does not point to any "extrajudicial" facts that I took under consideration. More significantly, Mr. Fagan has attached to his affidavit letters he wrote me which belie his contention that he was displeased with or forced to accept the fee and reimbursement award. On November 27, 2002, before I issued the fee award, Mr. Fagan wrote to "inform[] the Court that [he] will accept the award and will not appeal same." He also stated that he "would like thank the Court . . . for amicably resolving this matter." (Letter from Edward Fagan to Judge Korman (Nov. 27, 2002), attached to Fagan Aff.) On December 4, 2002, after he had reviewed the draft Order, Mr. Fagan again "indicate[d] that [he] accept[ed] the terms of the draft Order. . . . [and] should like to [thank] finally the Court . . . for [its] efforts in bringing this matter to an amicable resolution." (Letter from Edward Fagan to Judge Korman (Dec. 4, 2002), attached to Fagan Aff.) In light of this evidence, Mr. Fagan's allegation, more than 6 years later, that he was forced to accept the settlement, rings hollow.

5

Mr. Fagan's other allegations of bias and prejudice do not warrant lengthy discussion. As to his allegation that I "took his files," I said all that must be said in my letter, dated June 18, 2009: "This claim [i]s false. Indeed, as the DRB [New Jersey Supreme Court's Disciplinary Review Board] decision noted, those records were not 'lost.' Instead, [Mr. Fagan] 'left behind or abandoned' them at a home [he] had once rented 'after [his] tenancy had ended.'" (Korman letter (June 18, 2009) (quoting *In re Edward Fagan*, DRB 08-143, at 186, *supra*).) The truth of the matter is that Mr. Fagan abandoned his files and they would have been destroyed "were it not for the efforts of Professor Neuborne" who rescued Mr. Fagan's files and arranged to have them "stored, at great expense to the class of the Swiss Bank litigation, for a number of years at a commercial storage facility in the Bronx." (Korman letter (June 18, 2009).) Because there is no merit to this "taking of files" argument, I need not address the argument that my request that he provide an explanation as to his receipt of contributions was motivated by a concern that I might be liable to him for taking his files.

Finally, with respect to the allegations that I made disparaging remarks about Mr. Fagan at some point during the 10 years between 1999 and the present, Mr. Fagan has not identified a single such remark, much less one that gives "fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *LoCascio v.* 473 F.3d at 498.

Even assuming Mr. Fagan's affidavit was legally sufficient, it fails because it is untimely. Indeed, as the Second Circuit has

> made clear 'recusal motions are to be made 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim. There are at least two reasons for this rule: First, a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take. Second, *a prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters.*"

*Id.* at 497 (internal citations and quotation marks omitted; emphasis in original). Here, Mr. Fagan was aware of all of the "facts" that form the basis of his bias and prejudice allegations for a number of years, yet he waited until *after* I had issued the Order to Show Cause on July 31, 2009 to seek my recusal. He was first on notice that I had concerns about his failure to disclose his receipt of contributions in January

2009.  For nearly 7 months, Mr. Fagan chose not to respond to my inquiry.  Only when it became clear that avoidance would no longer work, and that he would need to answer or have a judgment entered against him, did Mr. Fagan, "as a fall-back position," move to have me recused.  "This protracted and unexplained delay provides yet another reason for rejecting" Mr. Fagan's motion.  *Id*. at 497 (rejecting motion for recusal where movant had "made no mention of [judge's] remark until *after* the District Court had denied his motion to amend and *after* it had denied his § 2255 petition.").

**Conclusion**

Mr. Fagan's motion seeking my recusal is denied.

**SO ORDERED.**

Brooklyn, New York
July 23, 2014                                              /s/
                                                                Edward R. Korman
                                                                Senior United States District Judge